IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS J. BEAL, | ) |
|       Petitioner, | ) Civil Action No. 2:23-cv-137 |
| v. | ) |
| | ) Magistrate Judge Patricia L. Dodge |
| L. ESTOCK, *et al.*, | ) |
|       Respondents. | ) |

**MEMORANDUM**

Pending before the Court[1] is Respondents' Motion to Dismiss (ECF 34) the Petition for a Writ of Habeas Corpus (ECF 3) filed by state prisoner Thomas J. Beal under 28 U.S.C. § 2254. For the reasons below, the Court will grant Respondents' Motion, deny Beal's claims for habeas relief as time-barred and deny a certificate of appealability.

**I.     Relevant Background**

In the Petition, Beal challenges the judgment of sentence imposed on him by the Court of Common Pleas of Fayette County in 2016. Assistant Public Defender Robert R. Harper ("trial counsel") represented Beal at his trial.

The Superior Court of Pennsylvania summarized the evidence introduced at the trial as follows:

> Doris Pastorius has been a baker at Pechin Superfoods Market (hereinafter "Pechin's") for twenty-seven years. On November 3, 2015, Pastorius, along with two other bakers, Steve Borek and Andy Pletcher, were scheduled to start their work shift at two o'clock a.m. On that morning, Pastorius and Pletcher arrived at Pechin's around 1:50 a.m. They entered Pechin's through the front door and went to the bakery department.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

> Approximately forty-five minutes into her shift, Pastorius noticed a rope ladder hanging down from the ceiling through a HVAC unit. After observing this oddity, Pastorius alerted Borek and Stanley Angel, a security guard employed by Pechin's. Angel walked into the market and immediately saw the rope ladder hanging from the ceiling. Angel testified that after he came into the market, he went over to the rope ladder and started to hear movement above. At that time, a person started to climb down the ladder. Pastorius testified that when she looked up, she saw two feet. Angel testified that a man with boots, jeans, and a grey hooded sweatshirt kicked out the grate from the HVAC unit and started to climb down the ladder. The individual then suddenly climbed back up the ladder. Immediately following that, Pastorius called Don D'Amico, the owner of Pechin's and Angel called the police.
>
> The police arrived on scene a few minutes after the call. Troopers Ryan Butka and Shane Reaghard of the Pennsylvania State Police approached the back of the building. They climbed up on the roof and began their search. They first found an open air conditioning unit with a rope ladder hanging down into the building. Continuing on with their search, the troopers got to the opposite end of the building. Trooper Butka found [Beal] under an air conditioning unit in an "army crawl" position.
>
> Trooper Butka identified himself as the police, pointed his weapon and informed [Beal] to come out from underneath the unit. When Trooper Butka asked [Beal] what he was doing up on the roof, [Beal] replied he was there sleeping. [Beal] was then placed in handcuffs and the troopers, along with the local fire department, assisted [Beal] off of the roof.
>
> - - -
>
> …Mr. D'Amico took two photographs while police arrested [Beal], two of which the Commonwealth introduced. They depicted authorities assisting [Beal] off the roof. [Beal's] clothing is plainly visible in the photographs, which depict him wearing jeans, gloves, a gray hooded sweatshirt, and brown boots. Second, Pechin's is one of several properties in the Laurel Mall complex, with all businesses sharing a common roof. Third, [Beal] was located at the far end of the building, approximately 100 to 150 yards from the burglar's point of entry.

*Commonwealth v. Beal*, 2017 WL 1324154, at *1 (Pa. Super. Ct. Apr. 10, 2017) ("*Beal I*").

At the end of the trial, the jury found Beal guilty of burglary, criminal trespass, and criminal mischief. The trial court sentenced Beal to a term of 46 to 240 months of imprisonment.

Beal, through counsel, filed a direct appeal with the Superior Court in which he claimed: (1) there was insufficient evidence to support his convictions of criminal trespass and burglary; (2) the jury's verdict was against the weight of the evidence; and (3) the trial court erred in

admitting photographs of him after he was taken into custody on the roof of the Laurel Mall. *Id.* at *2. The Superior Court rejected each of these claims on the merits and affirmed Beal's judgment of sentence in *Beal I* on April 10, 2017.

Beal did not petition for allowance of appeal with the Pennsylvania Supreme Court following the Superior Court's decision in *Beal I*. Thus, his judgment of sentence became final under both state and federal law on or around May 10, 2017, when the 30-day period for him to file a petition for allowance of appeal expired. 42 Pa. Cons. Stat. § 9545(b)(3); 28 U.S.C. § 2244(d)(1)(A). *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

On June 16, 2017, Beal filed a *pro se* petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 *et seq.* The trial court, now the PCRA court, appointed Attorney James Natale to represent him. Beal then filed a counseled amended PCRA petition. (Resp's Ex. H, ECF 34 at pp. 58-61.) In this counseled petition, Beal asserted that trial counsel was ineffective for failing to object to the security footage admitted at trial that showed "a boot or shoe coming down a rope ladder from the ceiling of Pechin's Grocery Store and then returning up to the ceiling." (*Id.* at p. 60.) The prosecution had claimed at trial that "the boot or shoe was that of [Beal.]" (*Id.*) According to Beal, "the boot or shoe" actually "depicted in the video is that of a Pennsylvania State Trooper." (*Id.*)

On January 2, 2018, following a hearing, the PCRA court denied Beal's first PCRA petition. (Resp's Ex. A, ECF 34-1 at p. 16; ECF 44 at p. 1.) Beal did not file an appeal with the Superior Court. Thus, Beal's first PCRA proceeding concluded on or around February 2, 2018, when the 30-day period for him to file an appeal expired.

3

Seventy-three days later, on April 16, 2018, Beal filed a second PCRA petition. (Resp's Ex. A, ECF 34-1 at p. 17; ECF 44 at pp. 2-4.) Beal, proceeded *pro se*,[2] claimed that trial counsel was ineffective for failing to "cross examine witness[es] as to how they could accurately and fairly state time of recording [of the security footage]"; (2) "failed to argue the color of boots to jury or even mention the different color of boots in video versus testimony"; (3) "get d[e]scription given to dispatcher at Pa. State Police"; (4) "get video reviewed by a forensic specialist"; and (5) "do a proper investigation prior to trial." (ECF 44 at p. 4.)

In an order dated August 22, 2018, the court dismissed Beal's pro se PCRA petition without a hearing, concluding that "the issues raised [in it] do not entitle [Beal] to post-conviction collateral relief, and thus no purpose would be served by further processing this matter." (*Id.* at pp. 12-13.) Beal did not appeal this order. Thus, his second PCRA proceeding concluded on or around September 21, 2018, when the 30-day period for him to file an appeal expired.

More than three years later, on December 22, 2021, Beal filed a third PCRA petition. (Resp's Ex. I, ECF 34-1 at pp. 63-86.) In this *pro se* PCRA petition, Beal raised claims of ineffective assistance of trial and PCRA counsel related to a trial discovery issue.[3] He also raised a claim premised on a DVD that was contained in his case file, which he obtained from Attorney Natale in December 2020. According to Beal, the DVD was of security footage from Pechin's that captured the events during the November 3, 2015, burglary. Beal asserted that he first viewed this "new" DVD in January 2021, shortly after Attorney Natale transferred his case file to him. Beal

---

[2] Pennsylvania law provides that an indigent first-time PCRA petitioner is entitled to the appointment of counsel. Because this was Beal's second PCRA petition, the state court was not required to appointment him counsel and it did not do so.

[3] Beal asserted that the trial court did not grant the defense's motion for a subpoena duces tecum until the day the jury verdict was docketed. Beal claimed that trial counsel should have asked the court for a continuance until the motion was heard, and that Attorney Natale should have argued in the first PCRA proceeding that trial counsel was ineffective for failing to do so.

4

claimed that "[t]he video shown at trial was completely different than the one turned over by [Attorney Natale]. Shown from a different angle, different people in the video, etc. Having access to this video as well as the one viewed before and during trial would have likely compelled a different outcome to the trial.") (*Id.* at p. 68.)

The PCRA court dismissed Beal's third petition without a hearing and Beal then filed an appeal with the Superior Court. (Pet's Ex., ECF 30 at 2-3.) The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Beal*, 2022 WL 4687121 (Pa. Super. Ct. Oct. 3, 2022) ("*Beal II*"). The Superior Court held that Beal's third petition was time-barred under the PCRA's one-year statute of limitations because it was not filed within one year of the date his judgment of sentence became final on May 10, 2017.[4] *Id.* at *2. The Superior Court found that the record reflected that the alleged "newly discovered" DVD had been in Beal's case file "since at least 2017, when he filed his initial counseled PCRA Petition[,]" *id.* at 1 n.1, and that none of Beal's claims fell within any exceptions to the PCRA's one-year time bar, including that for "newly discovery" evidence. *Id.*

---

[4] The PCRA has a one-year statute of limitations, which is codified at 42 Pa. Cons. Stat. § 9545(b) and which is jurisdictional. *See, e.g.*, *Commonwealth v. Ali*, 86 A.3d 173, 177 (Pa. 2014) It provides, in relevant part:

> (1) Any petition under this subchapter, including a second or subsequent petition, *shall be filed within one year of the date the judgment becomes final*, unless the petition alleges and the petitioner proves that:
> - - -
> *(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]*
> - - -
> (2) Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented.

42 PA. CONS. STAT. § 9545(b)(1)(ii), (2) (emphasis added). A petition invoking the exception provided in paragraph (1)(ii) must be filed "within one year of the date the claim could have been presented." *Id.*, § 9545(b)(2).

5

Beal filed his Petition for a Writ of Habeas Corpus (ECF 3) with this Court, at the very earliest, on January 24, 2023, the date he avers he placed the Petition in the prison mailing system. (*Id.* at p. 15.) Beal claims, as he did in his third PCRA petition, that the DVD contained in his case file is a recording of security footage that is different from the footage admitted at his trial. Beal broadly asserts that when he viewed this DVD in January 2021 he "was finally able to ascertain the critical errors made by former counsel" (*id.* at p. 5), but he does not explain what those errors were. (*See id.* at pp. 4-11.) Beal also claims, without any explanation or supporting facts, that the prosecution committed a "*Brady* violation."[5] (*Id.* at p. 10.)

In their Motion to Dismiss (ECF 34), Respondents assert that the Court should deny the Petition because Beal's claims are time-barred under the applicable one-year statute of limitations, which is in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and codified at 28 U.S.C. § 2244(d).

Beal has filed his Reply (ECF 41) and Respondents' Motion is ripe for review.

---

[5] To the extent that Beal also is claiming that Attorney Natale was ineffective, that claim is not cognizable because Beal did not have a federal constitutional right to counsel during his PCRA proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Therefore, he cannot receive habeas relief on a stand-alone claim that his PCRA counsel was ineffective, a fact codified by statute at 28 U.S.C. § 2254(i), which provides that "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." Moreover, to the extent that Beal is claiming that the PCRA court or the Superior Court erred during the litigation of his third PCRA petition, such claims are not cognizable either. *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) (the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding is not cognizable); *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.")

**II.     Discussion**

    A.  Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Beal's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

    B.  Beal's Claims are Time-barred

In 1996, Congress made significant amendments to the federal habeas statutes with the enactment of AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). AEDPA reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

AEDPA substantially revised the law governing federal habeas corpus. Among other things, AEDPA set a one-year limitations period for filing a federal habeas petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

AEDPA's statute of limitations is codified at 28 U.S.C. § 2244(d) and it provides, in relevant part:

    (1)       A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of –

          (A)       the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

          - - -

          (D)       the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AEDPA also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The date on which AEDPA's one-year limitations period commenced is determined on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 118-22 (3d Cir. 2004). In most cases, including this one, AEDPA's statute of limitations for all claims is calculated under § 2244(d)(1)(A) and begins to run on the date the petitioner's judgment of sentence became final.

Beal's suggestion that he should be able to use § 2244(d)(1)(D)'s triggering date for the start of AEDPA's statute of limitations is rejected because he has not shown that any of his claims are based on a factual predicate that could not have been discovered earlier through the exercise of due diligence. The Superior Court found as fact that the DVD on which Beal bases his claims has been his case file "since at least 2017, when he filed his initial counseled PCRA Petition." *Beal II*, 2022 WL 4687121, at *1. Under § 2254(e)(1), the Superior Court's factual determination is presumed to be correct unless Beal rebuts that presumption by clear and convincing evidence. Beal has not done so with regard to this finding. Indeed, Beal does not dispute that the DVD at issue was in his case file in 2017 during the litigation of his first PCRA proceeding.

Moreover, although Beal asserts that he was unaware of the existence of the DVD at issue until Attorney Natale provided it to him in December 2020, Beal has not shown that he acted with the requisite diligence in obtaining his case file from his former counsel.[6] The state court's docket sheet reflects that in May 2020 Beal moved to compel Attorney Natale to give the case file to Beal. (Resp' Ex. A, ECF No. 34-1 at p. 1.) This was several years after the first PCRA proceeding at which Attorney Natale had represented him had concluded. Similarly, correspondence Beal submitted in support of his third PCRA petition shows that he sent letters to Attorney Natale requesting his case file in April and May 2020. *(Id.* at pp. 80-82.) Under the circumstances, Beal has failed to establish that he exercised due diligence such that the statute of limitations would commence for any of his claims under § 2244(d)(1)(D)'s triggering date.[7]

Thus, in this case the start date for AEDPA's statute of limitations for all of Beal's claims is the date his judgment of sentence became final in accordance with § 2244(d)(1)(A). As explained above, that date is May 10, 2017. Beal filed his first PCRA petition 37 days later, on

---

[6] To satisfy § 2244(d)(1)(D)'s "due diligence" standard, "a prisoner must exercise reasonable diligence in the circumstances." *Wilson v. Beard*, 426 F.3d 653, 660 (3 Cir. 2005). Determining "whether a habeas petitioner has exercised due diligence is context specific." *Id.* at 661. "A petitioner need not have acted with maximum feasible diligence, but he also cannot have been sleeping on his rights." *Martin v. Adm'r New Jersey State Prison*, 23 F.4th 261, 273 (3d Cir. 2022) (internal quotations and citations omitted).

[7] Notably, although there is no basis for the Court to commence the one-year statute of limitations for any of Beal's claims under § 2244(d)(1)(D), Beal's claims would still be untimely even if the Court did so. According to Beal, he viewed the DVD contained in his case file for the first time in January 2021. Thus, if the Court were to calculate the limitations period for any claim under § 2244(d)(1)(D), AEDPA's limitations period would have expired *at the very latest one year later, in January 2022*. For the reasons explained below, Beal's third PCRA petition, which he filed in December 2021, was not "properly filed" and thus did not statutorily toll AEDPA's statute of limitations period under § 2244(d)(2) for any time. *Pace*, 544 U.S. at 414, 417.

June 16, 2017.[8] In accordance with § 2244(d)(2), this first PCRA proceeding statutorily tolled AEDPA's limitations period from June 16, 2017 through February 2, 2018, the date on which the deadline expired for him to appeal the PCRA court's order dismissing the petition. *See, e.g.*, *Martin v. Adm'r New Jersey State Prison*, 23 F.4th 261, 268 n.5, 269 (3d Cir. 2022); *Swartz v. Meyers*, 204 F.3d 417, 419-20 (3d Cir. 2000).

AEDPA's limitations period began to run again the next day, on February 3, 2018. Seventy-three days later, on April 16, 2018, AEDPA's limitations period was statutorily tolled in accordance with § 2244(d)(2) once again when Beal filed his second PCRA petition. As previously noted, this second PCRA proceeding remained pending through September 21, 2018, the date on which the deadline expired for him to appeal the PCRA court's order dismissing the petition. Because 110 days[9] had expired already from the limitations period, Beal had 255 more days—until on or around June 3, 2019—to file a timely federal habeas petition. Thus, all claims contained in Beal's Petition, which he filed on January 24, 2023, are untimely by more than 3 years and 7 months.

Beal's third PCRA petition does not affect the statute of limitations calculation. That is because Beal commenced that proceeding on December 22, 2021, which was *after* AEDPA's statute of limitations expired on or around June 3, 2019. Therefore, Beal's third PCRA proceeding could not serve to statutorily toll the limitations period under § 2244(d)(2). Nor did that proceeding

---

[8] To determine the dates during which AEDPA's statute of limitations ran, "we count beginning the first day following the date upon which the judgment became 'final,' *see* Fed. R. Civ. P. 6(a)(1), and treat his [first PCRA] petition as 'pending' from the date of its filing." *Martin*, 23 F.4th at 268 n.5.

[9] As discussed, 37 days had already expired from AEDPA's limitations period when Beal filed his first PCRA petition. Once that proceeding concluded, 73 more days expired from AEDPA's limitation period before he filed his second PCRA petition on April 16, 2018. Thus, 110 days had expired from AEDPA's one-year limitations period by the time Beal filed his second PCRA petition.

qualify as a "properly filed application for State post-conviction or other collateral review" under § 2244(d)(2) because the Superior Court determined that it was untimely under state law. *Pace*, 544 U.S. at 417 ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."); *id.* at 414 ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).") (internal quotation marks and bracketed text omitted).

The Supreme Court has held that AEDPA's limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows both that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649. "This conjunctive standard requires showing *both* elements before we will permit tolling." *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) (emphasis in original)).

The Court of Appeals has instructed that:

> "[t]here are no bright lines in determining whether equitable tolling is warranted in a given case." *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). Nevertheless, "courts must be sparing in their use of equitable tolling," *Seitzinger v. Reading Hosp. & Medical Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999), and should do so "only when the principles of equity would make the right application of a limitation period unfair." *Miller [v. New Jersey State Dept. of Corr.]*, 145 F.3d [616, 618 (3d Cir. 1998)].

*Id.; see also Martin*, 23 F.4th at 272-73.

Beal has failed to establish that he is entitled to equitable tolling. He may not have understood the ramifications of waiting so long to file his federal habeas petition, but it is well established that a petitioner's "lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross v. Varano*, 712 F.3d 784, 799-800 (3d Cir. 2013) (citing *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003) and *Doe v. Menefee*, 391 F.3d 147, 177 (2d Cir. 2004) ("Given that we expect pro se petitioners to know when the limitations period expires . . . such inadvertence

11

on *Doe*'s part cannot constitute reasonable diligence."); *Martin*, 23 F.4th at 273 (ignorance of the law is not enough to invoke equitable tolling).

Another exception to AEDPA's statute of limitations is the "miscarriage of justice" exception. In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court recognized that the actual-innocence "gateway" to federal habeas review developed in *Schlup v. Delo*, 513 U.S. 298 (1995) for procedurally defaulted claims extends to cases in which a petitioner's claims would otherwise be barred by the expiration AEDPA's one-year statute of limitations. This exception provides that a petitioner's failure to comply with AEDPA's one-year limitations period may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup*, 513 U.S. at 316.

The "miscarriage of justice" exception only applies in extraordinary cases in which the petitioner shows that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup*, 513 U.S. at 316. Moreover, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (quoting *Bousley*, 523 U.S. at 623).

Beal argues that the alleged "new" DVD supports his assertion that he is innocent. The DVD is an almost 30-minute recording of security footage taken by "Cam 22 Front Door/Produce" at Pechin's in the early morning hours of November 3, 2015. The Court has viewed that footage and finds that it is not the type of evidence that would demonstrate that this is one of the rare cases in which the miscarriage of justice rule is implicated.[10] The part of the ceiling at which Beal was

---

[10] Beal submitted the DVD to the Court as an attachment to ECF 23. The Court assumes for the purposes of this Memorandum only that the DVD is authentic and has expanded the record so that
*Footnote continue on next page…*

12

convicted of trying to enter Pechin's is shown in the upper left-hand corner of the video. The security camera was positioned too far from the point of entry to capture a clear picture of what was occurring during the burglary, however. Thus, the DVD would not have helped Beal's defense at trial, nor does it help him obtain federal habeas relief.

Based on the above, all of Beal's federal habeas claims are time-barred and he has shown no grounds that would allow him to avoid the time-bar and receive a merits review of his claims.[11] Thus, the Court will grant Respondents' Motion to Dismiss because they are correct that Beal's claims are time-barred.

## III. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate

---

the Court can consider it under Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts. *See Williams v. Woodford*, 384 F.3d 567, 590-91 (9th Cir. 2004) (expansion of the record under Rule 7 is a permissible step that may avoid the necessity of an expensive and time consuming evidentiary hearing); *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001) (Rule 7 "can be used to introduce new factual information into the record in lieu of an evidentiary hearing").

[11] To the extent that Beal is also raising a *freestanding* actual innocence claim (in addition to his *gateway* actual innocence claim), that claim is denied. In the Third Circuit, "[i]t has long been recognized that '[c]laims of actual innocence based on only newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Albrecht v. Horn*, 485 F.3d 103, 121-22 (3d Cir. 2007). However, the Court of Appeals has acknowledged that the Supreme Court has yet to definitely resolve the issue. *Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018). The Court of Appeals has further explained that to the extent freestanding actual innocence claims are cognizable, they must be "assessed under a more demanding standard [than a gateway actual innocence claim], since the petitioner's [freestanding] claim is that his conviction is constitutionally impermissible 'even if his conviction was the product of a fair trial[.]'" *Id.* (quoting *Schlup*, 513 U.S. at 316 and citing *House v. Bell*, 547 U.S. 518, 555 (2006)).

Suffice it to say that if indeed a freestanding claim of actual innocence could be brought in a non-capital federal habeas case such as this one, Beal has failed to offer the type of evidence of innocence that would entitle him to habeas relief on such a claim given that he has not satisfied the lesser (although still demanding) standard that applies to gateway actual innocence claims.

13

of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Beal's claims should be denied as untimely. Thus, a certificate of appealability is denied with respect to each claim.

**IV.    Conclusion**

For these reasons, the Court will grant Respondents' Motion to Dismiss (ECF 34), deny the claims Beal raises in the Petition because they are time-barred, and deny a certificate of appealability with respect to each claim.

An appropriate Order follows.


Date:  June 14, 2024                                 /s/ Patricia L. Dodge
                                                     PATRICIA L. DODGE
                                                     United States Magistrate Judge